1  PAUL J. SMOOT, SBN 160787
   ROBERT M. DESKY, SBN 022977
2  **ANDERLINI, FINKELSTEIN, EMERICK & SMOOT**
   400 South El Camino Real, Suite 700
3  San Mateo, California 94402
   Telephone (650) 348-0102
4  Facsimile  (650) 348-0962

5  Attorneys for PLAINTIFFS MARK SHAPOSHNIKOV
   AND STUDENT JOHN DOE

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN FRANCISCO DIVISION**

11 MARK SHAPOSHNIKOV, Individually and as )   Case No.
   Guardian Ad Litem for STUDENT JOHN DOE, )
12 STUDENT JOHN DOE by and through his )       **COMPLAINT FOR RETALIATION;**
   Guardian Ad Litem, )                        **NEGLIGENCE; VIOLATION OF TITLE**
13                                          )   **IX; UNRUH VIOLATION; FRAUD;**
                              Plaintiffs, )    **BREACH OF CONTRACT; AND**
14                                          )   **INTENTIONAL INFLICTION OF**
       v.                                   )   **EMOTIONAL DISTRESS**
15                                          )
   PACIFICA SCHOOL DISTRICT, fka )             **DEMAND FOR JURY TRIAL PURSUANT**
16 LAGUNA SALADA SCHOOL DISTRICT, )           **TO F.R.C.P. 38**
   INGRID B. LACEY MIDDLE SCHOOL, )
17 KITTY MINDEL, an Individual, MICHELE )
   GARSIDE, an Individual, THOMAS ZACH, an )
18 Individual, STUDENT ROE 1, PARENT(S) OF )
   STUDENT ROE 1, STUDENT ROE 2, )
19 PARENT(S) OF STUDENT ROE 2, STUDENT )
   ROE 3, PARENT(S) OF STUDENT ROE 3, )
20 STUDENT ROE 4, PARENT(S) OF STUDENT )
   ROE 4, STUDENT ROE 5, PARENT(S) OF )
21 STUDENT ROE 5, STUDENT ROE 6, )
   PARENT(S) OF STUDENT ROE 6, STUDENT )
22 ROE 7, PARENT(S) OF STUDENT ROE 7, )
   STUDENT ROE 8, PARENT(S) OF )
23 STUDENT ROE 8, STUDENT ROE 9, )
   PARENT(S) OF STUDENT ROE 9, STUDENT )
24 ROE 10, PARENT(S) OF STUDENT ROE 10, )
   INCLUSIVE, )
25                                          )
                              Defendants. )
26 _____ )

27

28

                                    1

1

2

### FIRST CAUSE OF ACTION
### Retaliation As To Defendants PSD, IBL, Garside, Mindel and Zach

3     Plaintiffs STUDENT JOHN DOE, a minor, and MARK SHAPOSHNIKOV appear, demand

4     a trial by jury, and, based upon information and belief, allege for causes of action alleged as follows:

5     ### Jurisdiction

6          1.     Jurisdiction is appropriate in federal court because plaintiffs have alleged a cause of

7     action under Title IX of the Education Amendments of 1972, 20 U.S.C.S. §§ 1681, *et seq*. This is an

8     action brought as a result of a continuing pattern of assault, battery, intimidation, harassment,

9     including sexual harassment and discrimination against plaintiff, a minor boy, for which all

10    defendants are and were legally responsible, and includes an action for violation of Title IX of the

11    Education Amendments of 1972, 20 U.S.C.S. §§ 1681, et seq. for discrimination on the basis of sex

12    based on sexual harassment of plaintiff. Defendant Pacifica School District (hereinafter sometimes

13    referred to as "PSD,") successor to Laguna Salada School District, which controlled and managed

14    public schools in Pacifica, California, including Ingrid B. Lacey Middle School (hereinafter

15    sometimes referred to as "IBL,") are, and were, at all relevant times the recipient of federal funds and

16    financial assistance for the purposes of Title IX of the Education Amendments of 1972, 20 U.S.C.S.

17    §§ 1681, et seq. Jurisdiction of the subject matter of this condition is established in this court under

18    Title 28 of the United States Code, Section 1343.

19         2.     Plaintiffs request that the court appoint plaintiff STUDENT JOHN DOE's father,

20    MARK SHAPOSHNIKOV, as his Guardian *ad litem*. Plaintiff STUDENT JOHN DOE is identified

21    as such, as are STUDENT ROES 1-10 and PARENT(S) of STUDENT ROES 1-10 for the protection

22    of the children. SHAPOSHNIKOV also brings this action on his own right. This complaint has been

23    brought under fictitious names to protect student go from further harassment and further retaliation.

24         3.     At all relevant times to this action, STUDENT JOHN DOE was a student attending

25    school in the city of Pacifica, County of San Mateo, State of California. At all times mentioned

26    herein, SHAPOSHNIKOV was the parent of STUDENT JOHN DOE, and entrusted defendants with

27    the care of student go to the extent fully alleged below.

28         4.     At all times mentioned herein, defendant PSD, i.e., Pacifica School District, successor

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION;
FRAUD; BREACH OF CONTRACT; AND I.I.E.D.          DEMAND FOR JURY TRIAL [FRCP 38]**

to Laguna Salada School District, controlled and managed public schools in Pacifica, California, including IBL, i.e., Ingrid B. Lacey Middle School. Defendant PSD is a public school district organized and operated under the laws of the State of California. PSD owns and operates defendant IBL. A portion of the funding for the school comes from the federal and state Government. At all times mentioned herein, defendant Pacifica School District by and through its agents, in particular, defendants Michele Garside, Superintendent of Pacifica School District, Thomas Zach, Director of Human Resources, Kitty Mindel, principal of Ingrid B. Lacey Middle School, were employees, agents and supervisors of the School District and were acting within the course and scope of their employment within the School District.

5.      At all relevant times, defendant Michele Garside is, and was, the superintendent of Pacifica School District located within the jurisdiction of San Mateo County.

6.      At all relevant times, defendant Thomas Zach is, and was, the director of Human Resources for the Pacifica School District located within the jurisdiction of San Mateo County.

7.      At all relevant times, defendant Kitty Mindel is, and was, the principal of Ingrid B. Lacey Middle School of Pacifica School District located within the jurisdiction of San Mateo County.

8.      At all relevant times, defendants STUDENT ROE 1 and PARENT(S) OF STUDENT ROE 1, was, and is, a resident of San Mateo County.

9.      At all relevant times, defendants STUDENT ROE 2 and PARENT(S) OF STUDENT ROE 2, was, and is, a resident of San Mateo County.

10.     At all relevant times, defendants STUDENT ROE 3 and PARENT(S) OF STUDENT ROE 3, was, and is, a resident of San Mateo County.

11.     At all relevant times, defendants STUDENT ROE 4 and PARENT(S) OF STUDENT ROE 4, was, and is, a resident of San Mateo County.

12.     At all relevant times, defendants STUDENT ROE 5 and PARENT(S) OF STUDENT ROE 5, was, and is, a resident of San Mateo County.

13.     At all relevant times, defendants STUDENT ROE 6 and PARENT(S) OF STUDENT ROE 6, was, and is, a resident of San Mateo County.

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.          DEMAND FOR JURY TRIAL [FRCP 38]**

14.     At all relevant times, defendants STUDENT ROE 7 and PARENT(S) OF STUDENT ROE 7, was, and is, a resident of San Mateo County.

15.     At all relevant times, defendants STUDENT ROE 8 and PARENT(S) OF STUDENT ROE 8, was, and is, a resident of San Mateo County.

16.     At all relevant times, defendants STUDENT ROE 9 and PARENT(S) OF STUDENT ROE 9, was, and is, a resident of San Mateo County.

17.     At all relevant times, defendants STUDENT ROE 10 and  PARENT(S) OF STUDENT ROE 10, was, and is, a resident of San Mateo County.

18.     Plaintiffs are aware of the true identities of defendants ROE 1 through 10 and have identified defendants using the ROE designation, i.e., STUDENT ROES 1 - 10 and PARENT(S) OF STUDENT ROES 1 - 10, to protect the identity of the students in the school to, at the very least, ameliorate embarrassment, harassment and other disparate and adverse conduct arising from disclosure of same. STUDENT ROES 1 through 10 are male students who are or were students at Ingrid B. Lacey Middle School who assaulted, battered, intimidated, and harass plaintiff STUDENT JOHN DOE in the manner more fully alleged below. Defendants  PARENT(S) OF STUDENT ROE 1 through 10 have permitted, condoned and encouraged a continuing pattern of assault, battery, intimidation, harassment, including sexual harassment against plaintiff STUDENT JOHN DOE, a minor boy, and after being notified of such conduct, said defendant parents negligently or intentionally failed to act responsibly and control their children all causing damage to plaintiff, STUDENT JOHN DOE, and his father, SHAPOSHNIKOV.

19.     Plaintiffs allege on information and belief that all relevant times, each and every defendant was the agent or employee of each other defendant, was acting within the course and scope of such agency or employment, and was acting with the consent, permission and authorization of each of the remaining defendants. All actions of each defendant ratified an approved by every other defendant.

20.     Consistent with the requirements of the California Government Code, a claim labeled Notice of Intent to Sue was properly served on PSD on September 25, 2004, and on several occasions thereafter, against PSD. Commencing on October 8, 2004, PSD purported to reject a claim by letter.

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.          DEMAND FOR JURY TRIAL [FRCP 38]**

1    Thereafter, PSD has rejected all of the claims.

2        21.    STUDENT JOHN DOE attended Ingrid B. Lacey Middle School at the time of the

3    acts as herein alleged. During which the California Constitution Article I, § 28 ( c) provides all

4    students with an inalienable right to a safe, secure and peaceful education. Additionally, school

5    authorities, i.e., IBL and PSD, are, and were, under a duty to supervise the conduct of students on

6    school grounds and to enforce the rules and regulations necessary for the protection of all students.

7    In doing so, pursuant to Education Code § 44807, every teacher in a public school must hold pupils

8    to a strict account for their conduct while on school grounds, with the express understanding that

9    students have a tendency to engage in aggressive and impulsive behavior that is likely to expose

10    students to risk of serious physical harm. Further, school authorities have, and had, been imbued with

11    the authority, obligations and duties of Education Code § 48900, which includes the ability to

12    discipline whether by suspension or expulsion any students who: "(a) Caused, attempted to cause,

13    or threatened to cause physical injury to another person, or willfully used force or violence on

14    another, except in self-defense."

15        22.    This complaint is ultimately the result of (1) an administration retaliating against a

16    young boy for reporting continuous harassment, assault and battery, intimidation and discrimination

17    from the beginning of the 2002 - 2003, i.e., September 2002, and continuing to the present, March

18    2004, and (2) the continuous unabated harassment, assault and battery, intimidation and

19    discrimination occurring on school grounds from September 2002 through March 2004. Plaintiffs

20    further believe the retaliation and harassment, *etc.* shall continue until and unless ordered by the

21    court to be abated. For example, on March 25, 2004, STUDENT JOHN DOE was disciplined by an

22    adult educator  for referring to STUDENT ROE 10 as "Munchkin." STUDENT JOHN DOE called

23    STUDENT ROE 10 "Munchkin" only after repeatedly requesting IBL adult staff and educators to

24    intercede and request STUDENT ROE 10 abate the incessant harassment of STUDENT JOHN DOE.

25    Not a single adult educator or administrator at IBL stepped up to assist STUDENT JOHN DOE when

26    he needed their help. Yet, the IBL adult staff did not waste a nano-second in pouncing on an

27    opportunity to discipline STUDENT JOHN DOE. Significantly, STUDENT ROE10 was not

28    disciplined for his incessant harassment of STUDENT JOHN DOE. The defendants named herein

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.**         **DEMAND FOR JURY TRIAL [FRCP 38]**

were either administrators and/or educators of the IBL such as Principal MINDEL, IBL, administrators of PSD, such as PSD Superintendent GARSIDE, PSD Director of Human Resources ZACH, and, or others, all of whom have a responsibility for either making policy or for implementing and enforcing supervisory, disciplinary, anti-bullying, anti-sexual harassment and anti-discrimination policies.

23.     Beginning in September 2002 and continuing to the present, STUDENT JOHN DOE has been continually harassed, assaulted, battered, bullied and discriminated against by students, teachers and administrators, based on their perception that STUDENT JOHN DOE, a nationally ranked ballroom dancer and straight-A student, was gay, by not enforcing existing policies against sexual harassment or by failing to institute a new policy or existing policy in the school district, as mandated by California law, against harassment on the basis of sexual orientation or sexual harassment. The school and school district was readily familiar with this specific type of harassment arising from a similar case, the Krow matter [involving the same school district, school principal and similar fact pattern of abuse, reported abuse, and the school district and school principal, MINDEL's failure to take any action], as well as being made acutely aware of the harassment in this case commencing September 2002, yet failed to take any action necessary to ameliorate, alleviate or stop the abuse suffered by STUDENT JOHN DOE or to educate the students of the school district regarding sexual orientation or hate crimes as they are done for other related matters, such as bullying, racism or sexual harassment. Attached hereto as **"Exhibit A"** and incorporated herein by reference are true and correct copies of the claims submitted and rejected by PSD outlining the general conduct giving rise to this action.

24.     This suit challenges the failure of PSD to enforce its disciplinary policies and procedures, anti-harassment, anti-bullying, and anti-discrimination policies to prevent physical and emotional harm to all students, including STUDENT JOHN DOE, and his parents. In addition to the policies and procedures in place, IBL and PSD was obligated to implement a program designed to prevent the ritualized abuse by students against students and condoned by the administration under Principal MINDEL because they are perceived as different. IBL and PSD had in force policies and procedures to prevent sexual harassment, discrimination and violence against students, and had in

fact enforced those policies and procedures against students harassing, discriminating and intimidating female students at Ingrid B. Lacey Middle School and other schools in PSD, and yet refused to enforce the policies with respect to STUDENT JOHN DOE simply because STUDENT JOHN DOE was a straight-A male student, nationally ranked in competitive ballroom dancing, who was, and is, perceived as gay and because defendants either [a] believed a child's emotional well-being is unimportant and trivial, or, [b] are afraid of controversy. IBL's and PSD's course of conduct violated the student's constitutionally protected rights under state law and caused him to suffered damages and this suit seeks redress for the harm suffered by STUDENT JOHN DOE and his family, through plaintiff MARK SHAPOSHNIKOV.

25.     At all times here in mentioned, IBL and PSD had in effect policies that should have and would have affected and protected STUDENT JOHN DOE, as well as other male students. It did not matter whether STUDENT JOHN DOE was heterosexual, homosexual or perceived homosexual or not, the policies in effect were to protect children from being verbally attacked, both orally and in writing, and physically attacked with sexually harassing or sexually oriented remarks, calling names, epithets and obscenities.

26.     The reports made by STUDENT JOHN DOE and his father plaintiff SHAPOSHNIKOV were met with accusations by said teachers, principals and administrators, that STUDENT JOHN DOE [a] was not telling the truth, [b] was making complaints with no basis, and [c] that name-calling attacks, both physical and verbal, were brought on by STUDENT JOHN DOE's behavior. IBL, MINDEL, PSD, GARSIDE and ZACH simply ignored the seriousness of the problem. No attempt to discipline, educate or inform the STUDENT ROES 1 through 10 who were engaging in the acts against STUDENT JOHN DOE or their parents was ever made, or, alternatively, any efforts were so feeble and purposefully ineffective that STUDENT ROE 1 through 10 had their anti-social and hateful conduct validated thereby emboldening STUDENT JOHN DOE's attackers. For example, STUDENT ROE 9, a notorious attacker who has been repeatedly reported to defendants IBL and MINDEL for verbal and physical abuse of STUDENT JOHN DOE, was again reported to defendants in December 2003 for making a death threat directed at STUDENT JOHN DOE in Mr. Smoot's class. In January 2004, STUDENT ROE 9 was rewarded by defendants with

the appointment of Peer Helper, i.e., a student who counsels students victimized by harassment at school.  IBL and PSD failed and refused to perform an adequate investigation as is required by the State of California and by PSD's own sexual harassment and hate-violence policy, other school policies and the State code, in order to avoid dealing with a problem they considered to be unimportant. Defendants did not employ or engage persons sophisticated in the area of abuse and bullying or committed to deal either with the victim or the attackers. No substantive attempt whatsoever was to institute any curriculum to educate the children about the acts being committed or take any other steps to control the harassment and, instead, allowed an atmosphere of hostility, fear, bullying, and homophobia to exist at the school.

a.      For example, only after plaintiffs engaged counsel and met with defendants in April 2003 did defendants PSD, IBL, MINDEL, GARSIDE and ZACH circulate an Anti-Bullying policy for parents and students to voluntarily sign and submit to the school. This Anti-Bullying Policy was taken directly from the website of noted psychologist, Philip McGraw, Ph.D., generally located at www.drphil.com (http://www.drphil.com/show/show.jhtml?contentId=1107_bullies.xml) and used verbatim. Significantly, there were and are two (2) versions of the Anti-Bullying Policy available, one is specifically directed to the issue of those students who are perceived to be "gay." Of the two Student Anti-Bullying Policies available, PSD and IBL refused to include language specific to the "bullying" conduct directed at students who are perceived as "gay." Notably, plaintiffs' complaints  for the eight months leading up to the distribution of the IBL Anti-Bullying policy specifically centered around STUDENT JOHN DOE being referred to as "gay" and "fag." Literally, withing a millimeter of the Anti-Bullying Pledge used was the statement:

> ***Gay and lesbian youth, even those who aren't gay, but are perceived as such, face unspeakable harassment and abuse in schools.*** PFLAG —Parents, Families and Friends of Lesbians and Gays— reports that the average high school student hears 25 anti-gay slurs daily and that 97 percent of high school students regularly hear homophobic remarks. To address this issue, PFLAG provided three anti-bullying pledges that specifically target harassment against gay, lesbian, bisexual and transgender students. (Emphasis added.)

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.          DEMAND FOR JURY TRIAL [FRCP 38]**

b.     Defendants refusal to utilize the specific Anti-Bullying Pledge designed and directed towards plaintiffs' complaints, concomitant with the Krow matter, demonstrates an egregious disregard and indifference fo the rights of students who are believed to be gay or lesbian or perceived as gay or lesbian.

c.     Defendants, alternatively, refused to create their own Anti-Bullying Pledge that addressed the specific issue PSD, MINDEL and the PSD School Board had been forced to address in the Krow matter, and the specific issue facing defendants in this matter, specifically, the use of the words "gay" and "fag" and the like to torment, harass and oppress a young man perceived as homosexual.

d.     Defendants PSD, IBL, MINDEL, GARSIDE and ZACH have intentionally minimized the threat of harm from boy-on-boy harassment, not just in purposefully eliminating any discussion of harassment of students "perceived as gay" as set forth above in 26. (a. - c.), but have demonstrated an intentional indifference towards students "perceived as gay" by numerous acts too numerous to identify, including inculcating an atmosphere of bias against those students "perceived as gay" by intentionally marginalizing them by excluding them from the school dialog. In at least one example, a May 15, 2003, school hand-out, those young boys who are "perceived to be gay" and are harassed by other "boys" are excluded from IBL intra-school discussion while specifically identifying all other forms of harassment, i.e., (1) boy-on-girl harassment, (2) girl-on-girl harassment, and (3) girl-on-boy-harassment. Defendants emphasized the seriousness of the above examples: (1) boy-on-girl harassment, (2) girl-on-girl harassment, and (3) girl-on-boy-harassment, by noting that the school can be sued in court for these three types of harassment, excluding boy-on-boy.

e.     As set forth above, many of the most aggressive and notorious bullies, e.g., STUDENT ROE 9, were given position of authority as Peer Helpers. The very same students terrorizing are promoted by the school administration as the students designated to help those they terrorize.

f.     Another example, relates to the repeated retaliation by IBL staff, educators and administration against STUDENT JOHN DOE.

g.      For example, instead of taking the action that defendants advised SHAPOSHNIKOV they were taking, defendants removed STUDENT JOHN DOE from class to "ensure he was not bothered" by the offending students. As a result STUDENT JOHN DOE was deprived of educational opportunities, as opposed to actually investigating the complained of conduct and disciplining the offending students.

27.      Defendants not only refused to institute basic procedures and policies to prevent harassment, including the policies and procedures agreed upon in the Krow Settlement, but also refused to heed basic common-sense advice, found in many education-related venues and available through organizations such as the National Education Association:

Tips for Handling Peer Harassment

1.      If you see a student harassing another student, tell the harasser to stop. Students have to understand that such behavior will not be tolerated.

2.      Report incidents to the appropriate school official designated by your school's anti-harassment policy. Title IX requires all schools to have a policy against sex discrimination and a complaint procedure that provides for prompt handling of sex discrimination complaints, including sexual harassment.

3.      If students tell you they've been harassed by a peer, listen. Don't judge the veracity of the student's allegations. Never tell students "boys will be boys" or "you need to learn how to handle these things." Identify the school official responsible for handling sexual harassment complaints and offer to help the student contact him or her. Finally, report the incident to this school official immediately.

4.      Through your local Association, request age-appropriate sexual harassment awareness training for students, school employees, and parents.

5.      Incorporate into the curriculum age-appropriate lessons that address diversity issues and promote respect for others.

28.     Due to the emotional and physical effects of the acts and omissions of the defendants, including STUDENT ROES and each of them, STUDENT JOHN DOE's  father, plaintiff MARK SHAPOSHNIKOV, repeatedly brought all of the aforementioned conduct set forth in this complaint, including facts set forth in the claims cumulatively identified as "Exhibit A," as well as numerous other specific complaints to numerous to detail, to the attention of defendants IBL, MINDEL, PSD, GARSIDE, and ZACH.

29.     As the conduct continued to escalate, and no apparent remedial measures were being taken, STUDENT JOHN DOE's father sought to contact the defendants PARENT(S) of STUDENT DOE 1 through 10 and other beginning in the of 2002. Defendants IBL and MINDEL refused to permit him to contact them, asserting they had already contacted the offending students and their parents and they were in control of the situation.

30.     Plaintiffs believed the representations of IBL and MINDEL and reasonably relied on same.

31.     Unfortunately, the conduct went unabated. As a matter of fact, the conduct escalated by December 2002, and continued to escalate through March 2003 regardless of the numerous, virtually routine complaints made by plaintiff MARK SHAPOSHNIKOV, specifically communicating with defendants IBL, MINDEL, PSD, GARSIDE and ZACH demanding action be taken to terminate the oppressive conduct directed at STUDENT JOHN DOE. With the new school term,  January 2003 (post-Winter Break School Term) plaintiff SHAPOSHNIKOV was forced to continue his deliberate and specific communications with defendants IBL, MINDEL, PSD, GARSIDE, and ZACH requesting the unabated and uninterrupted harassment be stopped. No appropriate action was taken by any defendants, even after STUDENT JOHN DOE received death threats.

32.     Plaintiffs were continually promised that action was being taken and further action was planned to be taken by defendants IBL, MINDEL, PSD, GARSIDE, and ZACH to deter and abate the violence and hateful conduct directed at STUDENT JOHN DOE. Yet, by March 2003, even after a death threat had been made against STUDENT JOHN DOE, the conduct on the school

grounds directed at STUDENT JOHN DOE simply intensified. At that point, SHAPOSHNIKOV sought legal counsel and demanded through counsel that defendants act as adults in their capacities as professional educators and take control of the school and its students ages 11-14 to ensure a safe environment for all students, not just STUDENT JOHN DOE.

33.     Immediately thereafter in April 2003, several IBL teachers announced to their home room classes that STUDENT JOHN DOE was suing the school and one of STUDENT JOHN DOE's teachers reprimanded STUDENT JOHN DOE for reporting the threats of physical violence, hate crimes and bullying to the administration. As a result of this additional retaliation, IBL students who had never attacked STUDENT JOHN DOE in any manner before, and who STUDENT JOHN DOE did not know, began verbally attacking STUDENT JOHN DOE calling him names, threatening to hurt him, in addition to numerous students asking him if he was in fact suing the school. Concomitantly, STUDENT ROES 1 through 10 continued their oppressive and wrongful conduct and activity unabated.

34.     At all times mentioned herein, the State of California Education Code required that criminal acts, including batteries against one student by another and other crimes be logged, categorized and reported to the police and authorities as well to the State of California on a semi-annual basis, and these reports would then be available to the public at-large. Defendants failed to report virtually all of the acts. The only acts that were reported to the police and authority were acts that STUDENT JOHN DOE's father plaintiff SHAPOSHNIKOV demanded be reported to the police department after filing claims against PSD. [Curiously, IBL Principal MINDEL had made a number of reports to the Pacifica Police Department regarding students whom she believed to be a threat to her own personal safety, yet did nothing for young male students from the age of 11 to 14.]

35.     Plaintiffs desired to handle this matter without a claim or lawsuit, and as such permitted IBL, MINDEL, PSD, GARSIDE and ZACH an opportunity to perform on their promises of abating the hostile and hateful conduct. Although plaintiffs repeatedly requested IBL and PSD to take action, plaintiffs waited for a full school year to pass based upon the promises and assurances of defendants that the harassment, bullying, intimidation, battery and assault would cease with the

1   commencement of the new school year.

2       36.     Immediately upon commencement of the new school year, September 2003, it was

3   business as usual, in that the harassment continued by the students against STUDENT JOHN DOE

4   and specific members of the IBL staff targeted STUDENT JOHN DOE. The retaliation by the PSD

5   and IBL staff and administration continued into the new school year. Instead of protecting

6   STUDENT JOHN DOE, defendants retaliated against him for challenging their ability to operate a

7   middle school by demanding that defendants conduct themselves as the adults trained to educate

8   children as they hold themselves out to be.

9       37.     As a legal result of the retaliation by defendants, and each of them, plaintiffs were hurt

10  and injured in their health, strength, and activity, sustaining injury to their body and shock and injury

11  to their nervous system and person, all of which injuries have caused, and continue to cause,

12  plaintiffs great mental, physical, and nervous pain and suffering. As a result of such injuries, plaintiff

13  has suffered general damages.

14

15      38.     The acts of the all defendants, including the oppressive and malicious conduct of

16  defendants and the failure of the defendants PSD, IBL, GARSIDE, MINDEL, and ZACH to take

17  appropriate action caused the plaintiffs [a] to suffer extreme emotional distress, [b] to be unable to

18  concentrate on STUDENT JOHN DOE's extracurricular activities and studying, [c] caused

19  STUDENT JOHN DOE to become seriously depressed and to exist in a constant state of fear in

20  despair, among other damages accruing to plaintiff STUDENT JOHN DOE and his family though

21  plaintiff MARK SHAPOSHNIKOV.

22      39.     As a legal result of the retaliation by defendants, and each of them, plaintiffs were

23  forced to expend monies to attempt to enforce their legal rights, including attorney fees and

24  associated costs, and therefore request special damages in an amount as yet unascertained. When

25  plaintiffs have determined the amount, plaintiffs will seek leave of court to establish their special

26  damages according to proof.

27      40.     The above-recited actions of defendants in retaliating against plaintiff STUDENT

28  JOHN DOE excluded him from the benefits of , and subjected him to discrimination and were done

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.**                    **DEMAND FOR JURY TRIAL [FRCP 38]**

with reckless and/or callous indifference to plaintiff STUDENT JOHN DOE's rights. As a legal result of the retaliation in violation of public policy by defendants, and each of them, plaintiffs were subjected to cruel and unjustified oppressive and malicious conduct. The acts of defendants, and each of them, as alleged herein were oppressive, fraudulent and malicious so as to entitle plaintiffs to an award of punitive damages in an amount sufficient to punish the defendants, and each of them, and make them an example.

Wherefore, plaintiffs pray damage against defendants as hereinafter set forth below;

**SECOND CAUSE OF ACTION**

**<u>Negligence As To All Defendants</u>**

41.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 39 as though set forth in full.

42.    At all relevant times herein, defendants PSD, IBL, GARSIDE, MINDEL, and ZACH owed a duty of care to ensure the safety and well-being of STUDENT JOHN DOE, as well as all students on the school grounds. This overall duty of care encompassed a duty to supervise the conduct of all students on the school grounds, to enforce rules and regulations necessary for the protection of all students, and to take all appropriate action to protect students from the misconduct of other students. All harassment of STUDENT JOHN DOE occurred on school grounds during school hours. Defendants' duty included, and includes, a duty to exercise due care in investigating complaints of physical harm and death threats, a duty to file police reports when students are subjected to death threats, physical harm and hate crimes, a duty to take appropriate measures to protect students from further harassment and to remove the dangerous and threatening students if necessary. PARENT(S) OF STUDENT ROE 1 through 10, as reported by MINDEL, GARSIDE and ZACH, were notified of their respective child's behavior and failed to take any action. These duties were concomitantly owed to plaintiff SHAPOSHNIKOV in his capacity as a parent entrusting his child to defendants for public education.

43.    As set forth above, including factual matters incorporated by reference  in "Exhibit

14

A," STUDENT JOHN DOE was subjected to oral - verbal harassment on a routine basis. STUDENT JOHN DOE was called "gay," "faggot," "queer," "fag," "girl," and other names, and threatening to physically harm him because he was "gay." Although there were other students who occasionally called STUDENT JOHN DOE names, STUDENT ROES 1-10 targeted STUDENT JOHN DOE and commenced an incessant campaign of abuse that only escalated as the conduct went unchecked and even condoned by all other defendants. Other IBL students avoided STUDENT JOHN DOE in fear of being similarly targeted. The verbal assaults were accompanied by physical violence and death threats.

44.     STUDENT JOHN DOE and SHAPOSHNIKOV reported the matters to the proper authorities at IBL and PSD. In response, nothing was done. When plaintiffs engaged legal counsel to assist in them in persuading defendants PSD, IBL, GARSIDE, MINDEL and ZACH to carry out their mandate as educators/administrators within the state of California, STUDENT JOHN DOE was subjected to retaliation by some teachers, staff and administration at IBL, including teachers announcing to their home room classes that STUDENT JOHN DOE was suing the school and one incredible incident in which STUDENT JOHN DOE's favorite teacher admonished him stating STUDENT JOHN DOE's complaints were diminishing the teacher's reputation. As a result of defendants PSD, IBL, GARSIDE, MINDEL and ZACH failure to take any meaningful disciplinary steps against STUDENT JOHN DOE's tormentors, the harassment continued and escalated.

45.     Defendants breached their duty of care at all times mentioned herein by failing to [a] monitor and control the inappropriate, intimidating and harassing conduct of STUDENT ROES 1-10, [b] failing to protect STUDENT JOHN DOE from the misconduct of STUDENT ROES, whether by reporting misconduct to police, removing the offending students from school through suspension or expulsion,  counseling or disciplining the offending students, [c] failing to institute curriculum, policies and programs to educate students, teachers and administrators, as most other schools in the Bay Area have done, and other schools in the same school district have done, [d] by failing to implement policies and procedures as a result of the settlement in a prior matter, involving almost identical circumstances and facts, including, but not limited to the same school district, principal and same type of reprehensible conduct.

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.          DEMAND FOR JURY TRIAL [FRCP 38]**

46.     At all times mentioned herein, defendants PSD, IBL, GARSIDE, MINDEL and ZACH owed a duty to investigate reports of assault, battery, harassment, hate crimes and death threats by one student against another. Defendants had a duty to specifically implement genuine anti-harassment policies and anti-bullying policies, and, in fact, purported to have same, at the very least as required by settlement of a prior lawsuit mentioned herein above, to which all students of PSD and IBL and their parents are third party beneficiaries. Defendant PARENTS owed a duty to supervise their respective children once they were notified by PSD, GARSIDE, ZACH, IBL and MINDEL. Defendants failed to do anything, in spite to the purported obligations, contractual, statutory and moral.

47.     As a legal result of the negligence of defendants, plaintiffs have sustained damage in an amount as yet unknown, but which substantially exceeds the jurisdictional limits of this court. Plaintiff shall seek leave of court to amend their complaint to conform to proof at the time of trial.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

### THIRD CAUSE OF ACTION
### Violation of Cal. Civ. Code §§ 51, *et seq.* As To School/Administration Defendants

48.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 47  as though set forth in full.

49.     In doing the things herein alleged above, defendants violated California Civil Code sections 51, 51.5 and 52. The Legislature intended that the phrase "business establishments" be interpreted 'in the broadest sense reasonably possible.'"

50.     As a legal result of the violation of the Unruh Act by defendants, and each of them, plaintiffs were hurt and injured in their health, strength, and activity, sustaining injury to their body and shock and injury to their nervous system and person, all of which injuries have caused, and continue to cause, plaintiffs great mental, physical, and nervous pain and suffering. As a result of such injuries, plaintiff has suffered general damages.

51.     As a legal result of the Unruh Act by defendants, and each of them, plaintiffs were forced to expend monies to attempt to enforce their legal rights, including attorney fees and associated costs, and therefore request special damages in an amount as yet unascertained. When plaintiffs have determined the amount, plaintiffs will seek leave of court to establish their special damages according to proof.

52.     As a legal result of the Unruh Act by defendants, and each of them, plaintiffs were subjected to cruel and unjustified oppressive and malicious conduct. The acts of defendants, and each of them, as alleged herein were oppressive, fraudulent and malicious so as to entitle plaintiffs to an award of punitive damages in an amount sufficient to punish the defendants, and each of them, and make them an example.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

## FOURTH CAUSE OF ACTION
### Fraud As To School/Administration Defendants

53.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 52 as though set forth in full.

54.     Defendants PSD and IBL through their respective agents, including, but not limited to, GARSIDE, ZACH and MINDEL, made numerous and repeated false representations to plaintiffs commencing with plaintiffs' first complaint of wrongful conduct by students, including, but not limited to STUDENT ROES 1 through 10,  against STUDENT JOHN DOE, IBL, MINDEL and the IBL administration stated  the school would follow its written policy and promptly and fairly investigate the matters, including  promptly contact the parents of the offending children/students, the school would take all appropriate action to abate the conduct, the school would take all appropriate action to protect STUDENT JOHN DOE. These representations were repeated in one form or another over the course of 15 months on at least 28 occasions. The list of representative statements is not exhaustive. When plaintiffs reported the offending conduct of students, including, but not limited to STUDENT ROES 1 through 10,  against STUDENT JOHN DOE, PSD, GARSIDE

and the PSD administration stated  the school and district would follow its written policy and promptly and fairly investigate the matters, including  promptly contact the parents of the offending children/students, the school and district would take all appropriate action to abate the conduct, the school and district  would take all appropriate action to protect STUDENT JOHN DOE. These representations were repeated in one form or another over the course of 13 months on at least 17 occasions. The list of representative statements is not exhaustive.

55.     All of the representations were and are false, and were knowingly false at the time and place they were made by all defendants, and these representations were made for the purpose of deceiving SHAPOSHNIKOV and STUDENT JOHN DOE and impairing their ability to remediate the wrongful conduct of STUDENT ROES and the adult defendants, and to prevent plaintiffs from discovering crimes and other infractions being committed on school grounds which would embarrass IBL, GARSIDE, PSD, GARSIDE and ZACH. Defendants concealed the fact that PSD and IBL were not complying with their responsibility to report crimes upon school grounds to the local police department, let alone the mandated semi-annual reporting. Defendants had stated that matters were investigated and there existed insufficient evidence to pursue the matter or take further action to provide STUDENT JOHN DOE with some protective measures, when in fact no investigation had been performed.

56.     Plaintiffs reasonable relied on the representations of the adult defendants because they were adult professional educators imbued with the authority to educate, discipline and ensure the safety of their student body, i.e., all students regardless of gender or sexual orientation, perceived or otherwise. For example, SHAPOSHNIKOV deliberately refrained from contacting PARENT(S) OF ROE 1 through 10 and from filing timely police reports based upon defendants representations., actions that would have put an end to the harassment. Further, based upon defendants deception and misrepresentations, plaintiffs were precluded from taking timely legal recourse, from pursuing their rights under PSD's anti-harassment policy, and/or seeking to compel defendants to conduct themselves as adult educator imbued with the opportunity and concomitant obligation to education minor children.

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION;
FRAUD; BREACH OF CONTRACT; AND I.I.E.D.            DEMAND FOR JURY TRIAL [FRCP 38]**

57.     As a legal result of the fraud by defendants, and each of them, plaintiffs were hurt and injured in their health, strength, and activity, sustaining injury to their body and shock and injury to their nervous system and person, all of which injuries have caused, and continue to cause, plaintiffs great mental, physical, and nervous pain and suffering. As a result of such injuries, plaintiff has suffered general damages.

58.     As a legal result of the fraud of public policy by defendants, and each of them, plaintiffs were forced to expend monies to attempt to enforce their legal rights, including attorney fees and associated costs, and therefore request special damages in an amount as yet unascertained. When plaintiffs have determined the amount, plaintiffs will seek leave of court to establish their special damages according to proof.

59.     As a legal result of the fraud by defendants, and each of them, plaintiffs were subjected to cruel and unjustified oppressive and malicious conduct. The acts of defendants, and each of them, as alleged herein were oppressive, fraudulent and malicious so as to entitle plaintiffs to an award of punitive damages in an amount sufficient to punish the defendants, and each of them, and make them an example.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

## FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress As To All Defendants

60.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 59 as though set forth in full.

61.     Defendant STUDENT ROES 1 through 10 purposefully and intentionally targeted STUDENT JOHN DOE with verbal epithets, threats of physical violence, physical violence, death threats and other conduct, as more particularly described above, all of which is outside the bounds of common decency for any civilized society. The School/Administration defendants' conduct, whether acts or omissions as more particularly described above, went beyond the bounds of decency,

19

particularly in light of the fact that these adult educators have been entrusted with young children at a most vulnerable time in their development.  IBL should not be a re-enactment of "Lord of the Flies."

62.     Defendants PARENT(S) of STUDENT ROES 1 through 10 are vicariously liable for the acts and conduct of their children STUDENT ROES 1 through 10 because, as defendants IBL, MINDEL, PSD, GARSIDE and ZACH repeatedly represented and stated to plaintiffs and then the news media, STUDENT ROES 1 through 10 had been repeatedly reprimanded and the parents of STUDENT ROES 1 through 10 had been repeatedly been put on notice of the offending behavior and the PARENT(S) of STUDENT ROES 1 through 10 took no action to socialize, civilize or discipline their children in any manner, or even attempting to prevent the continued conduct commencing in September 2002 and continuing through March 2004.

63.     As a legal result of the outrageous conduct by these defendants, and each of them, plaintiffs were hurt and injured in their health, strength, and activity, sustaining injury to their body and shock and injury to their nervous system and person, all of which injuries have caused, and continue to cause, plaintiffs great mental, physical, and nervous pain and suffering. As a result of such injuries, plaintiff has suffered general damages.

64.     As a legal result of the outrageous conduct by these defendants, and each of them, plaintiffs were forced to expend monies to attempt to enforce their legal rights, including attorney fees and associated costs, and therefore request special damages in an amount as yet unascertained. When plaintiffs have determined the amount, plaintiffs will seek leave of court to establish their special damages according to proof.

65.     As a legal result of the outrageous conduct by these defendants, and each of them, plaintiffs were subjected to cruel and unjustified oppressive and malicious conduct. The acts of defendants, and each of them, as alleged herein were oppressive, fraudulent and malicious so as to entitle plaintiffs to an award of punitive damages in an amount sufficient to punish the defendants, and each of them, and make them an example.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as more

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.                DEMAND FOR JURY TRIAL [FRCP 38]**

1  particularly set forth below;

2                        **SIXTH CAUSE OF ACTION**
3  **Breach of Contract: Third Party Beneficiary As To School/Administration Defendants**

4          66.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 65 as though set
5  forth in full.

6          67.     STUDENT JOHN DOE and SHAPOSHNIKOV were and are third party beneficiaries
7
8  of that certain settlement agreement arising from *Krow v. LSUSD, et al.* Significantly, as described
9  above, a significant and substantial term and condition of the settlement agreement included PSD
10 implementing a program to ensure the atrocities visited upon plaintiff Krow under MINDEL's
11 administration would never occur again to any student. To date, no such program has been
12 implemented. Further, the very same fact pattern has emerged once again.

13         68.     As a legal result of the breach of the Krow Settlement Agreement by defendants, and
14 each of them, plaintiffs were hurt and injured in their health, strength, and activity, sustaining injury
15 to their body and shock and injury to their nervous system and person, all of which injuries have
16 caused, and continue to cause, plaintiffs great mental, physical, and nervous pain and suffering. As
17 a result of such injuries, plaintiff has suffered general damages.

18         69.     As a legal result of the breach of the Krow Settlement Agreement by defendants, and
19 each of them, plaintiffs were forced to expend monies to attempt to enforce their legal rights,
20 including attorney fees and associated costs, and therefore request special damages in an amount as
21 yet unascertained. When plaintiffs have determined the amount, plaintiffs will seek leave of court
22 to establish their special damages according to proof.

23         WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as more
24 particularly set forth below;

25 / / /

26 / / /

27

28

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX; UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.          DEMAND FOR JURY TRIAL [FRCP 38]**

**SEVENTH CAUSE OF ACTION**
**<u>Violation of Title IX By School/Administration Defendants</u>**

70.     Plaintiffs reallege and incorporates paragraphs 1 through 69 as though set forth in full.

71.     Throughout the period of September 2002 through the present, plaintiffs reported each of the incidents described herein above and numerous others acts of harassment, intimidation and death threats based upon the perception that STUDENT JOHN DOE was, and is, "gay." The school principal MINDEL and PSD having been involved in a similar situation prior to plaintiffs first complaints, i.e., the Krow matter, the defendants, and each of them, were well aware of the recourse required to prevent damage and injury to plaintiffs. Defendants did not take any appropriate action. The action taken by defendants was so ineffectual that it had the same effect as no action being taken and condoning the behavior of harassment, etc. described herein above.

72.     Defendants failure to take appropriate action demonstrates a clear indifference to plaintiffs and all students subjected to harassment based upon the perception of being "gay". As set forth above, defendants knowingly refused to distribute Anti-Bullying Pledges referencing the "perception of being gay" even though most of the conduct complained of related to taunts, threats and harassment of STUDENT JOHN DOE using the terms: "gay," "fag," etc. The refusal to implement a sexual harassment program in light of the PSD policies and procedures, IBL policies and procedures, California State Education Code, the recent Krow matter involving PSD and MINDEL further demonstrates a deliberate indifference towards plaintiffs. The refusal to (1) prevent further   harassment by students once complained of, (2) the retaliation by school staff/teachers/administrators, (3) enforce the California State Education Code, PSD Policies and Procedures, IBL Policies and Procedures relating to harassment, (4) refusal to implement programs, (5) refusal to train staff, teachers and educators,.to identify several factors set forth herein above, demonstrate a deliberate indifference that prevented plaintiff STUDENT JOHN DOE from full participation in, denied plaintiff the benefits of, and subjected him to discrimination based upon sex in violation of Title IX.

73.     As a legal result of the outrageous conduct by these defendants, and each of them,

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.               DEMAND FOR JURY TRIAL [FRCP 38]**

plaintiffs were hurt and injured in their health, strength, and activity, sustaining injury to their body and shock and injury to their nervous system and person, all of which injuries have caused, and continue to cause, plaintiffs great mental, physical, and nervous pain and suffering. As a result of such injuries, plaintiff has suffered general damages.

74.     As a legal result of the outrageous conduct by these defendants, and each of them, plaintiffs were forced to expend monies to attempt to enforce their legal rights, including attorney fees and associated costs, and therefore request special damages in an amount as yet unascertained. When plaintiffs have determined the amount, plaintiffs will seek leave of court to establish their special damages according to proof.

75.     As a legal result of the outrageous conduct by these defendants, and each of them, plaintiffs were subjected to cruel and unjustified oppressive and malicious conduct. The acts of defendants, and each of them, as alleged herein were oppressive, fraudulent and malicious so as to entitle plaintiffs to an award of punitive damages in an amount sufficient to punish the defendants, and each of them, and make them an example.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

**EIGHTH CAUSE OF ACTION**
**Violation of 42 USC Section 1983 By School/Administration Defendants**

76.     Plaintiffs reallege and incorporates paragraphs 1 through 69 as though set forth in full.

77.     Throughout the period of September 2002 through the present, plaintiffs reported each of the incidents described herein above and numerous others acts of harassment, intimidation and death threats based upon the perception that STUDENT JOHN DOE was, and is, "gay." The school principal MINDEL and PSD having been involved in a similar situation prior to plaintiffs first complaints, i.e., the Krow matter, the defendants, and each of them, were well aware of the recourse required to prevent damage and injury to plaintiffs. Defendants did not take any appropriate action. The action taken by defendants was so ineffectual that it had the same effect as no action being taken

1    and condoning the behavior of harassment, etc. described herein above.

2        78.    Defendants failure to take appropriate action demonstrates a clear indifference to

3    plaintiffs and all students subjected to harassment based upon the perception of being "gay". As set

4    forth above, defendants knowingly refused to distribute Anti-Bullying Pledges referencing the

5    "perception of being gay" even though most of the conduct complained of related to taunts, threats

6    and harassment of STUDENT JOHN DOE using the terms: "gay," "fag," etc. The refusal to

7    implement a sexual harassment program in light of the PSD policies and procedures, IBL policies

8    and procedures, California State Education Code, the recent Krow matter involving PSD and

9    MINDEL further demonstrates a deliberate indifference towards plaintiffs. The refusal to (1) prevent

10   further   harassment by students once complained of, (2) the retaliation by school

11   staff/teachers/administrators, (3) enforce the California State Education Code, PSD Policies and

12   Procedures, IBL Policies and Procedures relating to harassment, (4) refusal to implement programs,

13   (5) refusal to train staff, teachers and educators,.to identify several factors set forth herein above,

14   demonstrate a deliberate indifference that prevented plaintiff STUDENT JOHN DOE from full

15   participation in, denied plaintiff the benefits of, and subjected him to discrimination based upon sex

16   in violation of section 1983.

17       79.    As a legal result of the outrageous conduct by these defendants, and each of them,

18   plaintiffs were hurt and injured in their health, strength, and activity, sustaining injury to their body

19   and shock and injury to their nervous system and person, all of which injuries have caused, and

20   continue to cause, plaintiffs great mental, physical, and nervous pain and suffering. As a result of

21   such injuries, plaintiff has suffered general damages.

22       80.    As a legal result of the outrageous conduct by these defendants, and each of them,

23   plaintiffs were forced to expend monies to attempt to enforce their legal rights, including attorney

24   fees and associated costs, and therefore request special damages in an amount as yet unascertained.

25   When plaintiffs have determined the amount, plaintiffs will seek leave of court to establish their

26   special damages according to proof.

27       81.    As a legal result of the outrageous conduct by these defendants, and each of them,

28

24

plaintiffs were subjected to cruel and unjustified oppressive and malicious conduct. The acts of defendants, and each of them, as alleged herein were oppressive, fraudulent and malicious so as to entitle plaintiffs to an award of punitive damages in an amount sufficient to punish the defendants, and each of them, and make them an example.

82.    WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

### NINTH CAUSE OF ACTION
### Violation of Equal Protection Clause By School/Administration Defendants

83.    Plaintiffs reallege and incorporates paragraphs 1 through 69 as though set forth in full.

84.    At all times mentioned herein, the Constitution of the State of California and United States of America provide that all citizens are entitled to equal protection. There exists no rational basis for gender or sexual orientation discrimination. Defendants PSD, GARSIDE, ZACH, IBL and MINDEL, and each of them, have a duty to provide equal protection to a student for sexual orientation harassment, just as they have a duty to provide protection for females against male sexual harassment and other student on student harassment.

85.    Throughout the period of September 2002 through the present, plaintiffs reported each of the incidents described herein above and numerous others acts of harassment, intimidation and death threats based upon the perception that STUDENT JOHN DOE was, and is, "gay." The school principal MINDEL and PSD having been involved in a similar situation prior to plaintiffs first complaints, i.e., the Krow matter, the defendants, and each of them, were well aware of the recourse required to prevent damage and injury to plaintiffs. Defendants did not take any appropriate action. The action taken by defendants was so ineffectual that it had the same effect as no action being taken and condoning the behavior of harassment, etc. described herein above.

86.    Defendant refusal and failure to take action to enforce the laws of the State of California and the United States of America demonstrate a deliberate indifference that prevented plaintiff STUDENT JOHN DOE from full participation in, denied plaintiff the benefits of, and

subjected him to discrimination based upon sex in violation of the Equal Protection Clause of the United States Constitution and the California State Constitution.

87.    As a legal result of the outrageous conduct by these defendants, and each of them, plaintiffs were hurt and injured in their health, strength, and activity, sustaining injury to their body and shock and injury to their nervous system and person, all of which injuries have caused, and continue to cause, plaintiffs great mental, physical, and nervous pain and suffering. As a result of such injuries, plaintiff has suffered general damages.

88.    As a legal result of the outrageous conduct by these defendants, and each of them, plaintiffs were forced to expend monies to attempt to enforce their legal rights, including attorney fees and associated costs, and therefore request special damages in an amount as yet unascertained. When plaintiffs have determined the amount, plaintiffs will seek leave of court to establish their special damages according to proof.

89.    As a legal result of the outrageous conduct by these defendants, and each of them, plaintiffs were subjected to cruel and unjustified oppressive and malicious conduct. The acts of defendants, and each of them, as alleged herein were oppressive, fraudulent and malicious so as to entitle plaintiffs to an award of punitive damages in an amount sufficient to punish the defendants, and each of them, and make them an example.

90.    WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as more particularly set forth below;

## TENTH CAUSE OF ACTION
### Violation of Education Code Section 48900 School/Administration Defendants

91.    Plaintiffs reallege and incorporates paragraphs 1 through 69 as though set forth in full.

92.    Defendants had a duty to report specifically proscribed matters to the Pacifica Police Department on a semi-annual basis, as set forth above. Defendants did not make any such reports when STUDENT JOHN DOE was the victim of boy-on-boy harassment, including the use of epithets that rise to the level of hate crimes, and death threats made on the IBL school grounds. Defendants

breached their duty by failing to report all proscribed matters as mandated by the Education and Penal Code.

93.     As a direct and legal cause of the breach, plaintiffs have been damaged in an amount as yet unascertained. Plaintiffs will seek leave to amend their complaint according to proof when ascertained.

94.     In doing the things herein alleged, defendants demonstrated a conscious disregard for the rights of plaintiffs. The conduct was, and is, so outrageous so as to justify exemplary and punitive damages.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b), plaintiffs hereby demand a jury trial.

## PRAYER

1.     For compensatory damages in an amount according to proof;

2.     For special damages in an amount according to proof;

3.     For attorney fees according to proof;

4.     For costs of suit;

5.     For punitive and exemplary damages, according to proof and statute;

6.     For treble damages according to proof and statute;

7.     For pre-judgment and post-judgment interest according to proof;

8.     For an order that PSD comply with California State Education Codes; and

9.     For such other relief as the court may deem appropriate, including, but not limited to, reassignment of defendant MINDEL to a position without involvement with children.

Dated: _____          **ANDERLINI, FINKELSTEIN, EMERICK & SMOOT**

By:_____

PAUL J. SMOOT, SBN 160787
Attorneys for Plaintiffs

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.          DEMAND FOR JURY TRIAL [FRCP 38]**

Pld-Cmpt.wpd

**COMPLAINT FOR RETALIATION; NEGLIGENCE; VIOLATION OF TITLE IX;  UNRUH VIOLATION; FRAUD; BREACH OF CONTRACT; AND I.I.E.D.          DEMAND FOR JURY TRIAL [FRCP 38]**